480 So.2d 166 (1985)
Valinda Lee SHELLEY, Appellant,
v.
Charles Edward SHELLEY, Appellee.
No. BF 131.
District Court of Appeal of Florida, First District.
December 17, 1985.
*167 Thomas N. Tucker, Pensacola, Dearing & Smith, Tallahassee, for appellant.
John L. Myrick of Kinsey, Myrick, Troxel & Johnson, P.A., Pensacola, for appellee.
MILLS, Judge.
Valinda Shelley appeals from a modification order which granted Charles Shelley's petition for child custody. We reverse.
The parties' minor daughter, Lori Shelley, was terribly burned and scarred in a boating accident at age three. Lori is now about seven years old and has resided with her paternal grandparents in Fort Walton Beach since November 1983.
In May 1982, the parties were divorced and Valinda Shelley, the mother, was awarded exclusive custody of Lori. At the time of the dissolution proceedings, the trial court was aware of Lori's tragic accident and her special needs. Two months later, Valinda moved to Houston, Texas, in search of employment and took Lori with her. Valinda secured work as a sales representative with the Ben Rose Fabric Company. However, initially her employment with this company required extensive travel and long hours, as she was required to learn the sales region. During this time, the insurance benefits for Lori's residential nursing care expired, so that Valinda was forced to hire live-in babysitters for Lori when she was out of town.
In November of 1983, Valinda began to experience difficulties with her live-in babysitters and concluded that during the remainder of her training period it would be to Lori's best advantage if she temporarily relinquished custody to the paternal grandparents. There is some dispute as to whether this was the actual reason for the mother returning Lori to Fort Walton. The Shelleys have testified that Lori was delivered to their care because Valinda was experiencing disciplinary problems with the child. Valinda denies this allegation.
By the late summer of 1984, Valinda had completed her training with Ben Rose and advised the Shelleys that she would soon be picking Lori up in order to return her to Houston in time for the commencement of school. In anticipation of Valinda's announced plans, Charles Shelley, the father, filed a petition for modification of the original custody decree asking that a temporary restraining order be issued to enjoin Valinda from removing Lori from his parents' care.
On the same day the petition for modification was filed, the trial court issued an ex parte temporary restraining and placement order without a hearing. The order temporarily placed Lori in the custody of her paternal grandparents. Although Valinda was aware of this order, before it could be served upon her, she picked up Lori at the home of the maternal grandparents in Pensacola and returned with her to Texas.
On 4 September 1984, while Valinda was in Houston with Lori, the trial court convened a hearing on the petition for temporary modification. As a result of the proceeding, *168 an order was entered designating Charles as the "sole residential parent" and allowing Lori to reside with her paternal grandparents. It should be noted that Charles lives in Pensacola, a distance of 45 miles from his parents' home.
Proceedings were commenced in the Texas courts to enforce the temporary restraining and placement order issued by the court below. Eventually, the Texas authorities enforced the order, and in mid-September 1984, Lori was physically removed from her classroom by Texas law enforcement officers and transported back to Florida.
A final hearing was conducted in January of 1985. The order upon petition for modification, which is the subject of this appeal, was rendered on 4 February 1985. The following language is contained therein:
The parties are hereby granted the shared responsibility for the child, but the father is granted responsibility for providing the primary physical residence for the child so long as she remains in the home of the paternal grandparents; and the father shall further have responsibility for all decisions pertaining to medical care and schooling.
As the order is phrased, it grants constructive custody of Lori to her father's parents. It is well settled that in the absence of a finding of abandonment, or that the natural parents are unfit, strangers, even grandparents, may not be awarded permanent custody of children when the natural parents have not relinquished their rights. Pape v. Pape, 444 So.2d 1058 (Fla. 1st DCA 1984). There was no finding by the trial court, nor does the evidence show that Valinda was unfit to have continuing custody of her child. Therefore, it was an abuse of judicial discretion to modify the original custody decree in this manner.
Although we find that the final judgment effectively grants custody of Lori to the paternal grandparents, because the trial court's language in the order addresses the issue of a substantial, material change in circumstances so as to justify a modification in Charles' favor, we find it necessary to discuss the standard applicable here as well. Whenever a noncustodial parent seeks to modify a prior custody award he shoulders the burden of proving:
(1) a substantial or material change in the circumstances of the parties since entry of the original custody order, and

(2) that the welfare of the child will be promoted by a change in custody.
Zediker v. Zediker, 444 So.2d 1034 (Fla. 1st DCA 1984). This is due to the fact that the original decree is considered res judicata as to all matters involved and known at the time it was rendered, including the fitness of the custodial parent and the best interest of the child. Belford v. Belford, 159 Fla. 547, 32 So.2d 312 (1947).
The trial court cites as the basis of its decision the fact that (1) Valinda moved away from Florida and took a job which required her to travel out of town, and (2) when Lori returned to Florida in November 1983, she was experiencing psychological problems. The first reason cannot justify a modification because there were no restrictions placed on Valinda's ability to travel with her child in the original order. Likewise, the second reason cannot be validly relied upon because the trial court in determining that Lori suffered from psychological problems looked to factors which predated the original custody decree.
Moreover, there is no clear proof in the record that Valinda in any way caused Lori to suffer from emotional problems. The tension and anxiety which Lori initially expressed in 1983 appears to more likely have been her natural reaction as a child of tender years to her parents' divorce and the tragic accident which left her permanently disfigured. Inasmuch, we conclude that sufficient showing of a change in material circumstances has not been made nor a demonstration that a change in custodial arrangements would promote Lori's welfare, as is required under Florida law. Avery v. Avery, 314 So.2d 198 (Fla. 1st DCA 1975).
*169 We have examined the remaining points urged on appeal and find them to be without merit. Accordingly, we reverse.
SHIVERS and ZEHMER, JJ., concur.